# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT KNOXVILLE

| | | |
|---|---|---|
| GARRICK GRAHAM | ) | |
| | ) | Case No. 3:21-cv-272 |
| v. | ) | |
| | ) | Judge Travis R. McDonough |
| BERT C. BOYD | ) | |
| | ) | Magistrate Judge Jill E. McCook |

## MEMORANDUM OPINON

Petitioner, a state prisoner, seeks habeas corpus relief under 28 U.S.C. § 2254 from various convictions arising out of a series of drug buys between himself and a confidential informant and the confidential informant and Petitioner's codefendant, Bashan Murchison (Doc. 2). *State v. Graham*, No. E2014-01267-CCA-R3-CD, 2016 WL 892013, at *1–4 (Tenn. Crim. App. Mar. 8, 2016) ("*Graham I*"). Respondent filed a response in opposition to the petition (Doc. 12) and the state court record (Doc. 11). Also, in response to the Court's order (Doc. 13), Respondent filed an amended answer (Doc. 16). Petitioner did not file a reply to either of Respondent's responses in opposition to his petition, and his time for doing so passed (Doc. 9, at 1; Doc. 13, at 3).

After reviewing the parties' filings and the state court record, the Court finds that Petitioner is not entitled to relief under § 2254, and no evidentiary hearing is warranted. *See* Rules Governing § 2254 Cases, Rule 8(a); *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). Accordingly, the habeas corpus petition will be **DENIED**, and this action will be **DISMISSED**.

## I. BACKGROUND

After the jury convicted Petitioner of all charges against him, he filed a direct appeal in which he, among other things, challenged the sufficiency of the evidence to support his

1

conspiracy convictions by asserting that "there was not proof of any agreement between himself and codefendant Bashan Murchison to sell cocaine within 1,000 feet of a school zone." (Doc. 11-16, at 36–46.) The Tennessee Court of Criminal Appeals ("TCCA") summarized Petitioner's convictions and the evidence from Petitioner's trial as follows:

> Defendant, Garrick Graham, and his Co–Defendant, Bashan Murchison, were convicted of numerous drug offenses by a Sullivan County Jury. Specifically, Defendant Graham was convicted of three counts of delivery of .5 grams or more of cocaine (counts 1,[ ]3,[ ]5), three counts of sale of .5 grams or more of cocaine (counts 2, 4, 6), delivery of .5 grams or more of cocaine within 1,000 feet of a recreation center (count 7), sale of .5 grams or more of cocaine within 1,000 feet of a recreation center (count 8), facilitation of delivery of .5 grams or more of cocaine within 1,000 of a school (count 9), facilitation of .5 grams or more of cocaine within 1,000 feet of a school (count 10), facilitation of delivery of .5 grams or more of cocaine within 1,000 feet of a daycare (count 11), facilitation of sale of .5 grams or more of cocaine within 1,000 feet of a daycare (count 12), delivery of .5 grams or more of cocaine (count 13), facilitation of sale of .5 grams or more of cocaine (count 14), conspiracy to sell more than 26 grams of cocaine within 1,000 feet of a school (count 21) and conspiracy to deliver more than 26 grams of cocaine within 1,000 feet of a school (count 22).

> *       *       *

> At the time of the offenses in this case, Corporal Ray McQueen of the Kingsport Police Department was the director of the Second Judicial District Drug Task Force (DTF).

> He was contacted by John Dukes about working as a confidential informant (CI) in the investigation of Defendant Garrick Graham and Defendant Bashan Murchison. Mr. Dukes had previously been convicted of a drug crime in Virginia and spent three months in jail. Since he was enlisted in the United States Army at the time of the offense, Mr. Dukes also spent three months in confinement as a result of a court martial. Mr. Dukes had met Defendant Graham in 2010 at the home of Mr. Dukes' sister, Keanna Duke, located at 111 Broadview Avenue in Kingsport, Tennessee. Defendant Murchison also had a relationship with Mr. Dukes' other sister. In the Spring of 2011, Mr. Dukes was charged in Virginia with conspiracy to distribute cocaine. Drug agents in Virginia suggested that he contact agents in Tennessee about becoming a CI. Mr. Dukes was paid for working as an informant, and he was not made any promises by Corporal McQueen about his pending Virginia charges in exchange for working as a CI. Thereafter, Mr. Dukes arranged controlled crack cocaine buys that took place on September 1, 10, 15, and 26, 2011, and on October 12, 17, and 24, 2011, and

2

finally on November 7, 2011. Defendant Graham was Mr. Dukes' contact for purchasing the cocaine.

Concerning the standard procedure for each of the controlled drug buys, Corporal McQueen testified: "Our deals are uniform. We try to make them all the same." He said that the CI would notify the DTF when there was an opportunity to buy drugs. A[t] least two DTF agents would then meet the CI at a predetermined location, and the CI would make a recorded call to the "target." Once a controlled buy was arranged, the DTF agents would search the CI and his vehicle for money, weapons, and narcotics. The CI would be given recording equipment and "buy money" to purchase the drugs. The controlled buy was then monitored by the agents. After the drug buy, the CI and DTF agents would meet at a predetermined location, and the agents would recover physical and recorded evidence, and a statement would be taken from the CI. The DTF agents would again search the CI and his vehicle. Corporal McQueen testified that the standard procedures were followed during each of the controlled buys involving Mr. Dukes and Defendants Graham and Murchison.

Mr. Dukes called Defendant Graham on September 1, 2011, to arrange the first drug buy. He met the DTF agents at the predetermined location and was given $1,000 to make the purchase. Mr. Dukes drove to his sister's house on Broadview Avenue, met Defendant Graham, and purchased twenty rocks of crack cocaine. Mr. Dukes noted that during the audio recording of the transaction, he attempted to negotiate a price for the drugs with Defendant Graham in order to build a "rapport" with him. Corporal McQueen and Mr. Dukes testified that there was no video of the buy because Mr. Dukes damaged the equipment when he dropped it. Agents observed Mr. Dukes walk into the house, and they monitored the audio of the transaction.

Agent Ashley Cummings, a forensic scientist with the Tennessee Bureau of Investigation (TBI) Chemistry Drug Identification Section, later performed chemical testing on a sample of the "rocklike substance" obtained during the controlled buy on September 1, 2011. The tested sample contained 1.46 grams of cocaine.

Mr. Dukes called Defendant Graham to arrange the second controlled buy which took place on September 10, 2011. Mr. Dukes met the agents and was given $1,300 to make the purchase. Mr. Dukes then drove to his sister's house on Broadview Avenue where he negotiated with Defendant Graham and purchased 34 rocks of cocaine for $1,250. Corporal McQueen testified that the equipment was again malfunctioning but there was an audio recording of the second drug buy. On the audio recording, Defendant Graham could be heard counting out thirty-four rocks of crack cocaine.

3

Agent Ashley Cummings of the TBI later tested the substance obtained during the controlled buy on September 10, 2011. The tested sample contained 1.98 grams of cocaine.

Mr. Dukes called Defendant Graham and arranged a third controlled buy on September 15, 2011. The transaction again took place at Ms. Dukes' house at 111 Broadview Avenue. This time the transaction was videotaped. Defendant Graham sold [Mr. Dukes] thirty-four rocks of crack cocaine for $1,250. During the meeting Defendant discussed another package of crack cocaine in his possession containing 600 rocks of cocaine. Mr. Dukes testified that the package of cocaine was in a big bag and was "[m]uch bigger["] than the amount he had bought from Defendant Graham.

Agent Carl Smith, a forensic scientist with the TBI, performed a chemical analysis on the "rocklike substance" purchased on September 15, 2011. He tested samples from "several small corner bags" which he determined contained .71 grams of cocaine. The gross weight of the remaining substance was 14.16 grams.

Mr. Dukes arranged a fourth buy from Defendant Graham on September 26, 2011. The two "talk[ed] back and forth," and the discussions led to a meeting at the IHOP restaurant located on East Stone Drive in Kingsport. Agents followed Mr. Dukes to the restaurant and identified a blue/green Buick LaSabre known to be Defendant Graham's vehicle in the parking lot. Lieutenant Brad Tate of the Bristol Police Department, who was assigned to the Second Judicial District Task Force, testified that he saw Defendant Graham sitting at the table with Mr. Dukes in the restaurant. While there, Defendant Graham sold Mr. Dukes 58 rocks of cocaine for $2,300. After a short amount of time, Lieutenant Tate saw Mr. Dukes and Defendant Graham walk out of the restaurant and get into the Buick LaSabre.

Agent Jacob White, a forensic scientist with the TBI, performed chemical testing on a sample of the "rocklike substance" purchased on September 26, 2011. The substance was packaged in "58 knotted individual corner plastic bags." The substance in three of the bags tested positive for cocaine, and the total weight of the three bags was 1.01 grams. The gross weight of the other 55 bags, including the packaging, was 23.68 grams.

Mr. Dukes contacted Defendant Graham about a fifth controlled buy on October 12, 2011. Mr. Dukes met Defendant Graham at 111 Broadview Avenue. While there, Defendant Graham called Defendant Murchison on a cell phone because Defendant Graham did not have the full amount of crack cocaine that Mr. Dukes was trying to purchase. Mr. Dukes also spoke with Defendant Murchison over the phone about purchasing 21 grams of cocaine for $2,000. Mr. Dukes testified that he only had $1,800 in buy money, and Defendant Graham agreed to cover the remaining amount so that Defendant Murchison would not complain. At some point, Mr. Dukes and Defendant Graham left the house on Broadview and drove to a carwash on Lynn Garden Drive to meet Defendant Murchison. On the way,

Mr. Dukes and Defendant Graham had a recorded conversation about "[g]oing to the source or cutting out the middle man."

When they arrived at the car wash, Mr. Dukes got into Defendant Murchison's vehicle, and Murchison's wife or fiancée, Teresa Holder, was also in the vehicle with him. Defendant Graham remained outside and washed Defendant Murchison's vehicle. In a recorded conversation while in the vehicle, Defendant Murchison and Mr. Dukes discussed how $150 to $200 could be made by selling .5 grams of crack cocaine. Mr. Dukes testified that they also discussed: "[Y]ou know, I was making so much money, you know, pushing what he just gave me, that I should give him some money to—when he goes back to his source to get more to bring back more." Mr. Dukes also told Mr. Murchison that he thought Defendant Graham had been taking advantage of Mr. Dukes because there was a lot of "shake" in a couple of buys that Mr. Dukes had made from Mr. Graham. Mr. Dukes then paid Defendant Murchison $2,000 for crack cocaine.

Agent John Scott, a forensic scientist with the TBI, performed chemical testing on the sample of the "rocklike substance" purchased on October 12, 2011. The sample tested positive for crack cocaine. The total weight of the substance was 26.34 grams.

Mr. Dukes arranged for a sixth controlled buy with Defendant Graham on October 17, 2011. He spoke with Defendant Graham by phone, and they discussed Mr. Dukes purchasing 21 grams of cocaine for $2,000 which Mr. Dukes felt was too expensive. Mr. Dukes said, "I'm paying almost street value what a crack head would pay." Mr. Dukes then called Defendant Murchison to negotiate a price for the cocaine. Mr. Dukes spoke to Defendant Graham again, and Defendant Graham indicated that if Mr. Dukes "bought two ounces sitting at 24 grams [he would] only have to pay $1,800 a piece." They discussed that the two ounces would be purchased from Defendant Murchison. Mr. Dukes testified that the numbers given to him by Defendant Graham came from Defendant Murchison.

Mr. Dukes later met Defendant Murchison at the IGA parking lot located on West Sullivan Street, and Defendant Murchison got into the car with him. Corporal McQueen observed Murchison get into the vehicle. Defendant Murchison's wife or fiancée was in Murchison's vehicle. They had a discussion about 28 grams of cocaine, and whether Mr. Dukes had brought the correct amount of money. Mr. Dukes testified that he purchased crack cocaine from Defendant Murchison, and on the video of the transaction, Defendant Murchison could be heard counting the money that had been given to Mr. Dukes by the DTF. Officer Grady White of the Kingsport Police Department assisted the DTF on October 17, 2011. He followed a silver Subaru Outback for a short distance and then made a stop of the vehicle for changing lanes without using a signal. Defendant Murchison was driving the vehicle, and Teresa Holder was in the passenger seat.

Agent Sharon Norman, a forensic drug chemist with the TBI, performed chemical testing of the substance purchased on October 17, 2011. The substance tested positive for cocaine and weighed 20.93 grams.

Mr. Dukes arranged a seventh controlled buy with Defendant Graham, and they met at 111 Broadview Avenue on October 24, 2011. They discussed Defendant Murchison's cocaine prices and amounts. At Defendant Murchison's request, Mr. Dukes then drove to the Perfect Pair, a business located on Stone Drive and owned by Defendant Murchison and Teresa Holder. Defendant Graham arrived at the business after Mr. Dukes. Mr. Dukes then gave Defendant Murchison $1,950 to purchase crack cocaine, and Defendant Murchison gave the drugs to Defendant Graham. Mr. Dukes drove back to 111 Broadview Avenue, and Defendant Graham delivered the cocaine to him. Mr. Dukes noted that the cocaine appeared to be wet.

Agent David Holloway, a forensic drug chemist with the TBI, performed chemical testing on the substance purchased on October 24, 2011. The substance tested positive for cocaine and had a total weight of 25.31 grams.

Mr. Dukes arranged an eighth controlled buy on November 7, 2011. He initially called Defendant Graham, who did not answer. Mr. Dukes then spoke to Defendant Murchison. He later met Defendant Murchison at the Perfect Pair and purchased a one-half ounce "chunk" of crack cocaine for $1,000. Since Defendant Murchison did not have the full amount of drugs that Mr. Dukes had requested, Mr. Dukes called Defendant Graham and began negotiating another drug transaction in Defendant Murchison's presence. Defendant Graham offered to sell Mr. Dukes 22 rocks of cocaine for $1,700. Mr. Dukes testified that Defendant Murchison did not want anything that he (Defendant Murchison) said, during Mr. Dukes' conversation with Defendant Graham, relayed to Defendant Graham. Mr. Dukes told Murchison that Graham had 22 rocks for $1,700. Mr. Dukes then overheard Murchison talking on the phone to Defendant Graham. Later that day, Mr. Dukes drove to the carwash located at 525 Lynn Garden Drive. Defendant Murchison then arrived at the carwash and sold Mr. Dukes an additional 22 rocks of cocaine for $900. Mr. Dukes testified that he knew the 22 rocks of crack cocaine came from Defendant Graham because of the "way it looked." The 22 rocks that Mr. Dukes had purchased earlier from Graham were individually wrapped.

Agent Michael Bleakley, a forensic drug chemist with the TBI, tested the "rocklike substance" purchased on November 7, 2011. One "larger piece" of the substance weighed 6.62 grams and tested positive for cocaine. The substance in two "small corner bags" had a gross weight, including packaging, of 8.69 grams. Agent Bleakley testified that the total weight of the substance submitted was less than 26 grams.

Steven Starnes is the Geographic Information Systems (GIS) analyst and princip[al] cartographer for the City of Kingsport. He is an expert in the fields of cartography and GIS analysis for the City of Kingsport. Mr. Starnes testified that he created "drug buffer" maps for use in the present case. The maps demonstrated that the IHOP Restaurant located at 1201 East Stone Drive was within 1,000 feet of the Boys and Girls Club of Kingsport, which is a recreational center. The carwash located at 525 Lynn Garden Drive, where the controlled drug buy on October 12, 2011, occurred, is within 1,000 feet of the Andrew Jackson Elementary School. Another map prepared by Mr. Starnes demonstrated that the IGA store located at 433 West Sullivan Street is within 1,000 feet of the Play Center, which is a child daycare facility.

*Graham I*, at \*1–4. The TCCA affirmed Petitioner's convictions. *See generally id*.

Petitioner then filed several pro se petitions for post-conviction relief (Doc. 11-26, at 4–7, 12–39, 45–79, 120–32), and his post-conviction counsel ultimately filed an amended petition for post-conviction relief asserting various claims (*id.* at 146–154).[1] After holding a hearing (Doc. 11-29), the post-conviction court denied Petitioner relief (Doc. 27, at 25–39).

Petitioner appealed the denial of his post-conviction petition to the TCCA by asserting in relevant part that his counsel was ineffective for failing to object to the prosecution's amendment to Counts 21 and 22 of the presentment. (Doc. 11-30, at 17–20.) The TCCA summarized the relevant portions of Petitioner's post-conviction hearing as follows:

Trial counsel said that the State moved on the first day of jury selection to amend the presentments in the two conspiracy counts to reduce the weight of the cocaine from 300 grams or more to 26 grams or more. Counsel explained to Petitioner that the amendment would result in Petitioner being charged with and tried for a less serious offense and that Petitioner did not object to the amendment. The trial court granted the State's motion on the second day of jury selection and before the jury was sworn.

Petitioner testified that he did not agree to an amendment of the presentment, offering the following explanation:

---

[1] Petitioner also filed a motion for relief from his sentence under Rule 36.1 of the Tennessee Rules of Civil Procedure, as well as an appeal of the trial court's denial of this relief (Docs. 11-19, 11-20, 11-21, 11-22, 11-23, 11-24, 11-25). However, the issues in that Rule 36.1 motion and appeal are not relevant to Petitioner's claims for relief under § 2254, and the Court will not address them.

7

Yeah, I told him because the 26 grams, that's how, you know, it's the same thing as the, as a buy that was on, I think it was the 26th, count on 9/26, so they were going to try to use that conspiracy and I knew that --- I told him that ---- I just hoped that the judge believes me, but I'm telling you that I wouldn't agree to that. I would have set my own self up and 26 grams, 300 is not no lesser included defense and, man, I would not agree to, you know, setting my own self up. This would have been four, what the fourth indictment that was changed. They had sent these back to the grand jury, why didn't they send the other ones?

Petitioner said that trial counsel never discussed with him "why the drug[-]free zone and the sale of cocaine [were] included together[.]"

*Graham v. State*, No. E2020-00775-CCA-R3-PC, 2021 WL 1750891, at *2–3 (Tenn. Crim. App. May 4, 2021) ("*Graham II*"). The TCCA affirmed the post-conviction court's denial of the post-conviction petition. *See generally id.*

Petitioner next filed the instant § 2254 petition.

## II.     STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") allows a federal court to grant habeas corpus relief on any claim adjudicated on the merits in a state court only where that adjudication (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established" United States Supreme Court precedent; or (2) "resulted in a decision that was based on an unreasonable determination of facts in light of the evidence presented." *See* 28 U.S.C. § 2254(d)(1) & (2); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

This Court may grant habeas corpus relief under the "contrary to" clause where the state court (1) "arrive[d] at a conclusion opposite to that reached by [the Supreme Court] on a question of law; or (2) decide[d] a case differently than the Supreme Court on a set of materially indistinguishable facts." *See Williams v. Taylor*, 529 U.S. 362, 405 (2000). The Court may

grant habeas corpus relief under the "unreasonable application" clause where the state court applied the correct legal principle to the facts in an unreasonable manner. *Id.* at 407.

But even an incorrect state-court decision is not necessarily unreasonable. *See Schriro*, 550 U.S. at 473 ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold" (citing *Williams*, 529 U.S. at 410)). Rather, this Court may grant relief for a claim decided on its merits in state court only where the state court ruling "was so lacking in justification that there was an error understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

Before a federal court may grant habeas corpus relief, the petitioner must have first exhausted his available state remedies for the claim. 28 U.S.C. §2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Exhaustion requires a petitioner to have "fairly presented" each federal claim to all levels of the state appellate system to ensure that states have a "full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990) (citing *Justices of Boston Mun. Court v. Lydon*, 466 U.S. 294, 302–03 (1984)). "It is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (internal citations omitted). Instead, the doctrine of exhaustion requires a petitioner to present "the same claim under the same theory" to the state courts as she seeks to present in federal court. *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987); *see also Wagner v. Smith*, 581 F.3d 410, 418 (6th Cir. 2009) (finding constitutional claim must be presented in federal court under the same theory as presented in state appellate process). In Tennessee, presentation of a claim to the TCCA satisfies this requirement. Tenn. S. Ct. R. 39.

If the petitioner never presented a claim to the highest available state court and a state procedural rule now bars presentation of the claim, he procedurally defaulted that claim, and the claim is technically exhausted but procedurally defaulted. *Coleman v. Thompson*, 501 U.S. 722, 731–32, 750 (1991); *Gray v. Netherland*, 518 U.S. 2074, 2080 (1996); *Jones v. Bagley*, 696 F.3d 475, 483 (6th Cir. 2012) ("When a petitioner has failed to present a legal issue to the state courts and no state remedy remains available, the issue is procedurally defaulted."). Tennessee petitioners may generally proceed only through one full round of the post-conviction process, and Tennessee imposes a one-year statute of limitation on such actions. Tenn. Code Ann. § 40-30-102(a) (one-year limitation period), § 40-30-102(c) ("one petition" rule).

## III.    ANALYSIS

The Court will address Petitioner's claim that the evidence was insufficient to support his conspiracy convictions before addressing his ineffective assistance of counsel claim.[2]

### A.    Sufficiency of the Evidence

Petitioner challenges the sufficiency of the evidence to support his convictions for Count 21 (conspiracy to sell more than twenty-six grams of cocaine within one-thousand feet of a

---

[2] Prior to setting forth his specific claims for relief in his § 2254, Petitioner generally states that he "presents each ground raised and addressed in his post[-]conviction, claiming that the state Courts of Tennessee['s] application of law was contrary to or involved an unreasonable application of well[-]established law as defined by the United States Supreme Court." (Doc. 2, at 8.) While Respondent did not address this general statement in his original response (Doc. 12), Respondent asserts in his amended answer to the petition that this general statement is insufficient to raise all claims from Petitioner's post-conviction proceeding (Doc. 16, at 16–17). And Petitioner could have but did not file a reply to Respondent's amended response indicating his intention to proceed with all claims from his post-conviction proceeding. Also, in his § 2254 petition, Petitioner does not specifically list his post-conviction claims or set forth facts to support such claims. As such, the Court agrees with Respondent that Petitioner's general reference to his post-conviction claims is insufficient to raise all such claims in this action. Rule 2(c)(1)–(2) of the Rules Governing Section 2254 Cases (providing that "[t]he petition must . . . specify all the grounds for relief available to the petitioner . . . [and] state the facts supporting each ground . . . .").

10

school) and Count 22 (conspiracy to deliver more than twenty-six grams of cocaine within 1,000 feet of a school) of his presentment. (Doc. 2, at 10.) To support this claim, Petitioner argues that the TCCA's statement in its opinion on his direct appeal that the relevant inquiry for determining whether the evidence was sufficient to support these convictions is "'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact **could have** found the essential elements of the crime beyond a reasonable doubt," *Graham I*, at *14 (quoting *Jackson v. Virginia*, 443 U.S. 307 (1979) (bold emphasis added)), was "contrary to clearly established law" because a Tennessee court has found that the proper standard is whether a jury "'would have'" found the evidence sufficient, *id.* (quoting *Moore v. State of Tenn.*, 485 S.W.3d 411, 421 (Tenn. 2016)).

In its opinion affirming Petitioner's conspiracy convictions, the TCCA described the required elements of the conspiracy and drug sale charges against Petitioner under Tennessee law as follows:

> Conspiracy requires that "two (2) or more people, each having the culpable mental state required for the offense which is the object of the conspiracy and each acting for the purpose of promoting or facilitating commission of an offense, agree that one (1) or more of them will engage in conduct which constitutes such offense." T.C.A. § 39–12–103(a). Some overt act in the pursuance of the conspiracy must be proved to have been done by the defendant or another member of the conspiracy. Id. § 39–12–103(d); *State v. Thornton,* 10 S.W.3d 229, 234 (Tenn.[ ]Crim.[ ]App.[ ]1999).

> To prove the existence of a conspiratorial relationship, the State may show that a "mutual implied understanding" existed between the parties. *State v. Shropshire,* 874 S.W.2d 634, 641 (Tenn.[ ]Crim.[ ]App.[ ]1993). A formal agreement is not necessary. *Id.* The conspiracy may be demonstrated by circumstantial evidence and the conduct of the parties while undertaking the illegal activity. *Id.* "[]'Conspiracy implies concert of design and not participation in every detail of execution.'[]" *Id.* (quoting *Randolph v. State,* 570 S.W.2d 869, 871 (Tenn.[ ]Crim.[ ]App.[ ]1978).

> The sale of a controlled substance includes the following elements: (1) that the defendant sold a controlled substance; and (2) that the defendant acted

11

knowingly. T.C.A. § 39–17–417(a). "Sale" is a bargained-for offer and acceptance and an actual or constructive transfer or delivery of the controlled substance. *See State v. Holston,* 94 S.W.3d 507, 510 (Tenn.[ ]Crim.[ ]App.[ ]2002). The delivery of a controlled substance includes the following elements: (1) that the defendant delivered a controlled substance; and (2) that the defendant acted knowingly. T.C.A. § 39–17–417(a). "Delivery" means the actual, constructive, or attempted transfer from one person to another of a controlled substance, whether or not there is an agency relationship. T.C.A. § 39–17–402(6). A "controlled substance" includes any drug, substance, or immediate precursor in Schedules I through VIII of T.C.A. § 39–17–403 to T.C.A. § 39–17–416. See T.C.A. § 39–17–402(4). Crack cocaine is a Schedule II controlled substance. T.C.A. § 39–17–408(a), (b)(4). A person acts knowingly with respect to certain conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist. T.C.A. § 39–11–302(b). A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result. *Id.*

*Graham I,* at *14–15.

The United States Supreme Court's decision in *Jackson v. Virginia*, 443 U.S. 307 (1979) provides the controlling rule for Petitioner's claim challenging the sufficiency of the evidence to support his conspiracy convictions. *See Gall v. Parker*, 231 F.3d 265, 287–88 (6th Cir. 2000). In *Jackson*, the Supreme Court held that the evidence is sufficient to sustain a conviction if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. In determining whether the evidence meets this standard, the district court may not "reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the jury." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).

A federal habeas court reviewing the sufficiency of the evidence must apply two levels of deference. *Parker v. Renico*, 506 F.3d 444, 448 (6th Cir. 2007). First, under *Jackson*, the court gives deference to the verdict "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008) (citing

*Jackson*, 443 U.S. at 324 n.16); *see also Cavazos v. Smith*, 565 U.S. 1, 6–7 (2011) (providing that "a reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution'") (quoting *Jackson*, 443 U.S. at 326). The habeas court must give additional deference to the state court's consideration of the verdict under the AEDPA's highly deferential standards. *Cavazos*, 565 U.S. at 6 (noting the double deference owed "to state court decisions required by § 2254(d)" and "to the state court's already deferential review"). As such, a petitioner challenging the evidence against him "bears a heavy burden." *United States v. Vannerson*, 786 F.2d 221, 225 (6th Cir. 1986).

The TCCA correctly determined that the evidence was sufficient to support Petitioner's convictions. In its analysis of this claim, the TCCA first accurately quoted *Jackson* and cited other relevant Tennessee legal authority before summarizing the substantial evidence of the many controlled buys between Mr. Dukes, Petitioner, and Petitioner's codefendant Bashan Murchison that the prosecution presented at Petitioner's trial. *Graham I*, at *15–16. The TCCA also pointed out that Petitioner (1) personally sold cocaine to Mr. Dukes several times; (2) was present when Mr. Dukes bought drugs from Mr. Murchison on one occasion; (3) discussed Mr. Murchison's drug pricing with Mr. Dukes; and (3) "essentially acted as a drug courier between Defendant Murchison and Mr. Dukes." *Id.* at *16. The TCCA further rejected Petitioner's assertions that Mr. Dukes's testimony was uncorroborated or otherwise inadmissible, as (1) other substantial evidence at trial supported Mr. Dukes's testimony, and (2) Mr. Dukes, as a confidential informant, did not qualify as an accomplice under Tennessee law. *Id.* Accordingly,

the TCCA found that the evidence was sufficient to support Petitioner's conspiracy convictions in Counts 21 and 22. *Id.*

Petitioner has not established that this an unreasonable application of federal law or an unreasonable determination of the facts based on the evidence. First, Petitioner's assertion that the TCCA wrongly applied the Supreme Court's exact language from *Jackson* to determine whether a reasonable juror "could have" found Petitioner guilty of the two conspiracy counts based on the evidence presented has no merit. As set forth above, Petitioner relies on *Moore*, a Tennessee case, to support his argument that the proper standard for this claim was whether a jury "'would have'" found him guilty of these crimes. (Doc. 2, at 11 (quoting *Moore*, 485 S.W.3d at 421 n.3).) But the *Moore* holding on which Petitioner relies does not address the legal standard applicable to claims challenging the sufficiency of the evidence. *Moore*, 485 S.W.3d at 420–21. Rather, this holding provides that Tennessee courts assessing ineffective assistance of counsel claims should determine whether the result of a proceeding "would have," rather than "could have," been different but for counsel's allegedly deficient performance. *Id.* This holding has no relevance to Petitioner's claim challenging the sufficiency of the evidence against him. But even if *Moore* were inconsistent with *Jackson*, *Jackson* would control the issue for this Court. 28 U.S.C. § 2254(d)(1).

Additionally, to the extent Petitioner asserts that the TCCA's conclusion that the evidence was sufficient to support his conspiracy convictions was an unreasonable determination of the facts based on the evidence under 28 U.S.C. § 2254(d)(2), Petitioner does not set forth any facts or argument to dispute the substantial evidence upon which the TCCA relied to find that the evidence at his trial was sufficient to support his conspiracy convictions under Tennessee law. *Graham I*, at *15–16. And the Court's review of the state court record supports the TCCA's

14

decision that the evidence at Petitioner's trial was sufficient to support Petitioner's conspiracy convictions under Tennessee law.

Accordingly, Petitioner is not entitled to relief under § 2254 for his claim that the evidence was insufficient to support his conspiracy convictions.

### B.    Ineffective Assistance of Counsel

Petitioner next claims that his counsel was ineffective for failing to object to the amendment of the conspiracy counts of the presentment to substantially less amounts of drugs based on various theories, some of which he asserts for the first time in this Court. (Doc. 2, at 14–19.) For the reasons set forth below, Petitioner is not entitled to relief under § 2254 for this claim.

### i.    *Standard of Review*

The Sixth Amendment provides, in pertinent part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. This includes the right to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims for ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland*, 466 U.S. at 687. A petitioner has the burden of proving that his counsel provided ineffective assistance. *Virgin Islands v. Nicholas*, 759 F.2d 1073, 1081 (3d Cir. 1985).

In considering the first prong of *Strickland*, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. A party asserting an ineffective-assistance-of-counsel claim must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

The second prong of the *Strickland* test requires a claimant to show counsel's deficient performance prejudiced the defense. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691.

The Supreme Court has emphasized that a claimant must establish both prongs of a claim for ineffective assistance of counsel to meet his burden, and if either prong is not satisfied, the claim fails. *Strickland*, 466 U.S. at 69. Moreover, a habeas petitioner alleging ineffective assistance of counsel bears a heavy burden, given the "doubly deferential" review of a such a claim under § 2254(d)(1). *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

### ii. *Analysis*

Counts 21 and 22 of the presentment originally charged Petitioner with conspiracy to sell and deliver 300 grams of a substance containing cocaine within 1,000 feet of a school. (Doc. 11-1, at 14–17.) However, the record establishes that, before Petitioner's trial began, the prosecution sought to amend the drug amounts listed in Counts 21 and 22 of the presentment to 26 grams, which was a lesser included offense. (Doc. 11-5, at 18–19.) The prosecution sought

16

this amendment because various codefendants originally charged with Petitioner and Mr. Murchison had entered plea agreements, and the prosecution therefore did not intend to submit evidence of the codefendants' deals at Petitioner and Mr. Murchison's trial, as the codefendants' deals occurred after the last deal directly involving Petitioner and Mr. Murchison.  (*Id.* at 18–23.) While Petitioner's counsel did not initially agree to this amendment, he ultimately did, as he viewed the amendment as a win for the defense, and Petitioner did not object to the amendment when counsel discussed it with him.  (Doc. 11-5, at 18–23, 27, 55; Doc. 11-29, at 15–17, 36–43.) But Petitioner denies that he agreed to this amendment.  (Doc. 11-29, at 50–51.)  Nevertheless, Counts 21 and 22 of the presentment against Petitioner were "amended by agreement" to reflect drug amounts of 26, rather than 300, grams.  (Doc. 11-1, at 14–17.)

In his appeal to the TCCA of the denial of his petition for post-conviction relief, Petitioner claimed that amendment of the presentment without his consent violated Rule 7 of the Tennessee Rules of Civil Procedure, and his counsel's agreement to this amendment therefore was deficient performance that prejudiced his defense and his ability to be acquitted of the conspiracy charges.  (Doc. 11-30, at 17–20.)  In analyzing this claim, the TCCA pointed out that the post-conviction court found that Petitioner's post-conviction hearing testimony in which he denied consenting to the amendment was not credible and that Petitioner's counsel's testimony that Petitioner had not objected to the amendment was credible.  *Graham II*, at *4.  The TCCA therefore found that "Petitioner . . . failed to present any credible evidence proving that the trial counsel was deficient . . . in not objecting to the amendment of the presentments."  *Id*.

In this action, Petitioner asserts that (1) his counsel's decision to consent to amendment of Counts 21 and 22 to substantially less drug amounts was deficient performance because the amended counts charged different drug amounts and included the assertion that the offenses

charged therein occurred in a school zone;[3] (2) the amendment of Counts 21 and 22 added different charges and therefore violated Rule 7 of the Tennessee Rules of Criminal Procedure; and (3) had his counsel failed to consent to the amendment of Counts 21 and 22 to lower drug amounts, the prosecution would not have had proof to support those counts, and the jury therefore would have found him not guilty of those counts. (Doc. 2, at 14–19.) Petitioner further asserts that his counsel's lack of knowledge that the amendment to the presentment did not charge lesser included offenses amounts to deficient performance. (*Id.* at 15, 17–19.)

To the extent that Petitioner asserts that the TCCA's denial of his claim that amendment of Counts 21 and 22 without his consent violated Rule 7 of the Tennessee Rules of Criminal Procedure by asserting that this denial was "contrary to" Supreme Court precedent under 28 U.S.C. § 2254(d)(1), this argument fails, as he has not cited a Supreme Court case that decided a question of law on a substantively similar set of facts. Also, to the extent that Petitioner challenges the TCCA's denial of this claim as an "unreasonable determination of the facts in light of the evidence presented in the state court proceeding" under 28 U.S.C. § 2254(d)(2), the record does not support any such argument. Specifically, Rule 7(b)(1) of the Tennessee Rules of

---

[3] At one point in his petition, Petitioner cites *United States v. Cronic*, 466 U.S. 648 (1984) as a legal standard applicable to his allegation that his counsel was ineffective regarding amendment of the presentment. (Doc. 2, at 15.) In *Cronic*, a case decided the same day as *Strickland*, the Supreme Court held that, for purposes of an ineffective assistance of counsel claim, a court should presume the prejudice on the part of a petitioner where (1) a defendant is completely denied counsel during a critical stage of trial; (2) counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing"; or (3) the circumstances surrounding the trial made it unlikely that any lawyer could provide effective assistance. *See id*. at 659–60. But the only testimony in the record regarding the amendment to the presentment that the post-conviction court credited was Petitioner's trial counsel's testimony, and Petitioner's trial counsel testified that he considered the implications of the proposed amendment to the presentment, discussed that amendment with Petitioner prior to agreeing to it, and agreed to the amendment based in part on his belief that the amendment was a strategic win for Petitioner. (Doc. 11-29, at 15–17, 36–43.) Thus, *Strickland*, not *Cronic*, applies to this claim.

Criminal Procedure allows amendments of presentments to which defendants consent, Petitioner's counsel testified that he consented to the amendment of the presentments after discussing it with Petitioner, who did not object, and the post-conviction court did not credit Petitioner's testimony that he did not agree to the amendment, a decision which the Court will not second guess. *See Miller-El v. Cockrell*, 537 U.S. 322, 339 (2003) (noting that the reviewing court "is not as well positioned as the trial court is to make credibility determinations"). Thus, Petitioner has not presented any credible evidence that he did not agree to the relevant amendment of Counts 21 and 22, and he therefore has not presented any evidence from which the Court could find that the TCCA's determination that he was not entitled to relief for this claim was unreasonable.

Further, as to Petitioner's claim in his habeas corpus petition that his counsel's agreement to the amendment prejudiced his ability to be acquitted, which Petitioner very generally raised to the TCCA (Doc. 11-30, at 20), but the TCCA did not directly address, the Court must presume that the TCCA rejected this claim on its merits. *Johnson v. Williams*, 568 U.S. 289, 301 (2013) (providing that "[w]hen a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits").

Moreover, Counts 21 and 22 of the presentment, as amended, charged Petitioner with lesser included offenses of the original Counts 21 and 22. (Doc. 11-5, at 18–19; Doc. 11-29, at 39–40); *see also* Tenn. Code. Ann. § 39-17-417(a), (i)(5), and (j)(5) (effective July 1, 2012–June 30, 2014). As such, Petitioner's counsel testified that: (1) without amendment of Counts 21 and 22 to the reduced drug amounts, he would have argued to the jury that Petitioner should be held responsible for a smaller amount of drugs; (2) he did not initially consent to the amendment

because he wanted to first consider all of the relevant issues regarding the amendment and speak with Petitioner; and (3) he ultimately reached the conclusion that the prosecution's proposed amendment to Counts 21 and 22 was favorable to the defense. (Doc. 11-29, at 38–43.) Thus, it is apparent that Petitioner's counsel made the strategic decision to agree to the amendment of Counts 21 and 22 after due consideration of the relevant facts and law. As such, Petitioner has not established prejudice or deficient performance based on this allegation. *Strickland*, 466 U.S. at 690–91 (noting that counsel's "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable").

As Respondent correctly points out in his amended answer, Petitioner procedurally defaulted his other theories in support of this claim that he first presents in this action. (Doc. 16, at 11–12.) And Petitioner has not presented cause or prejudice to excuse this procedural default. As such, he is not entitled to relief based on these theories. Nevertheless, these theories have no merit for the reasons set forth below.

Specifically, Petitioner asserts for the first time in his habeas corpus petition that his counsel's consent to amendment of Counts 21 and 22 of the presentment was deficient performance because Petitioner did not consent to the amendment, and the amended charges were not lesser included offenses of the original charges against him but rather different charges because they alleged different drug amounts and that Petitioner and his codefendant committed the relevant acts in a school zone. (Doc. 2, at 15.) These theories fail at all levels.

Specifically, these theories first fail because, as the Court noted above, both the record and the relevant statute establish that amended Counts 21 and 22 charged Petitioner with lesser included offenses of the original charges. (Doc. 11-5, at 18–19; Doc. 11-29, at 39–40); *see* Tenn. Code. Ann. § 39-17-417(a), (i)(5), and (j)(5) (effective July 1, 2012–June 30, 2014). And

20

Petitioner has presented no proof that the amended charges were not lesser included offenses other than his own conclusory allegations.

Second, this argument also fails because Rule 7(b)(1) of the Tennessee Rules of Criminal Procedure allowed any amendment to the presentment with Petitioner's consent. Tenn. R. Crim. P. 7(b)(1). And the post-conviction court found that Petitioner consented to the relevant amendment based on its determination that Petitioner's counsel's testimony was more credible than Petitioner's, which is a finding that the Court will not second-guess.

Lastly, this argument additionally fails because it ignores the fact that the original charges in Counts 21 and 22 likewise alleged that the offenses included therein occurred in a school zone. (Doc. 11-1, at 14–17.) In fact, the relevant amendment of which Petitioner complains amounted only to crossing out 300 grams and writing in 26 in its place. (*Id.*) Thus, the amendment to Counts 21 and 22 did not add in the school zone element of the offenses therein.

Accordingly, Petitioner has not established that his counsel was deficient regarding amendment of the presentment, and he is not entitled to relief under § 2254 for this claim.

## IV. CONCLUSION

For the reasons set forth above, the petition for § 2254 relief will be **DENIED**, and this action will be **DISMISSED**.

The Court must now consider whether to issue a certificate of appealability ("COA") should Petitioner file a notice of appeal. Under 28 U.S.C. § 2253(a) and (c), a petitioner may appeal a final order in a habeas corpus proceeding only if he is issued a COA, and a COA may issue only where a Petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). Where the court dismissed a claim on the merits, but reasonable jurists could conclude the issues raised are adequate to deserve further review, the petitioner has

made a substantial showing of the denial of a constitutional right and thus a COA should issue. *See Miller-El*, 537 U.S. at 327, 336; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Reasonable jurists could not conclude that Petitioner has made a substantial showing of a denial of a constitutional right with regard to his claim challenging the sufficiency of the evidence to support his conspiracy convictions or his ineffective assistance of counsel claim regarding amendment of the presentment, such that these claims would deserve further review. Accordingly, a **COA SHALL NOT ISSUE.** Also, the Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. Fed. R. App. P. 24.

**AN APPROPRIATE JUDGMENT ORDER WILL ENTER.**

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**